Richard C. Gramlich – State Bar No. 014449
r.gramlich@cplawfirm.com
Adam M. Weiler – State Bar No. 025822
a.weiler@cplawfirm.com
**CARMICHAEL & POWELL, P.C.**
7301 North 16th Street, Suite 103
Phoenix, Arizona 85020-5297
Phone: (602) 861-0777
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TRIYAR HOSPITALITY SCOTTSDALE, LLC, an Arizona Limited Liability Company; STEVEN YARI and SHAHROD YARI, individually, | No. |
| Plaintiffs, | **COMPLAINT** |
| v. | **(Fraudulent Misrepresentation, Promissory Estoppel, Breach of Implied Covenant and Declaratory Judgment)** |
| HSH NORDBANK AG, a German Bank Domiciled in New York, New York, | **(Jury Trial Requested)** |
| Defendant. | |

Plaintiff Triyar Hospitality Scottsdale, LLC ("Triyar"), Steven Yari and Shahrod Yari (collectively "Yari"), as and for their claims against HSH Nordbank AG ("HSH"), affirmatively allege as follows:

**PARTIES AND JURISDICTION**

1.    HSH is a German banking corporation, with offices in New York, New York, which has caused events to occur in Maricopa, State of Arizona, such that it is subject to this Court's jurisdiction and venue.

2.    Triyar is an Arizona limited liability company which owns the "W Scottsdale Hotel" located in Scottsdale, Arizona.

3.    Steven Yari is a California resident and the sole Member of Member entity of Triyar.

4.    Shahrod Yari resides in Scottsdale, Arizona and is the sole Member

of Member entity of Triyar.

5.    This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1332(a) (2), as it involves parties of diverse citizenship in a controversy which exceeds the value of $75,000.00.

6.    This Court has personal jurisdiction over HSH because it conducts business in Maricopa County, Arizona, and has caused acts to occur therein, causing damage to Arizona residents.

7.    Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims occurred in Maricopa, Arizona, and the Defendant is subject to jurisdiction therein.

## GENERAL ALLEGATIONS

8.    On or about December 28, 2005, HSH entered into a Construction Loan Agreement with Triyar, pursuant to which HSH agreed to make two loans to Triyar, in the maximum aggregate amount of $73,000,000.00 to be used for the development and construction of the 224 room "W Hotel" and 18 luxury condominiums on the top thereof.

9.    Pursuant to the terms of an Amendment to the Construction Loan, the original $73,000,000 in loans were increased by an additional $10,000,000.00 to the aggregate loan amount of $83,000,000.00 (the "Construction Loan").

10.    HSH claims that it has funded $78,061,069.00 of the $83,000,000.00 Construction Loan it agreed to fund.

11.    Prior to March 30, 2006, Triyar infused its initial capital contribution of $17,000,313.92 as the required borrowers' equity.

12.    Pursuant to the terms of the Construction Loan, HSH was obligated to fund approved construction draw requests through the completion of the Hotel and the condominiums.

13.    On or about October of 2007, HSH first advised Triyar that its loan

- 2 -

was "out of balance" (i.e., additional equity was required to be deposited by Triyar) and refused to fund Construction Draw 20 unless Triyar contributed additional capital.

14.   HSH subsequently promised to continue funding the Construction Loan if Triyar would bring its loan into balance by making an additional capital contribution, which it did on October 31, 2007, by funding Draw 20 in the amount of $2,313,982.00.

15.   Triyar made an additional $1,229,554.00 capital contribution on or about December 2, 2007, in response to continued concerns by HSH regarding the loan's balance and promises to continue funding if same were corrected.

16.   On or about January 24, 2008, HSH notified Triyar that in addition to being out of balance, it was also in breach of the Construction Loan by failing to provide requested information; and that although the Bank was no longer obligated to continue funding, it would, nonetheless, continue funding if Triyar produced the information requested by HSH and infused additional capital.

17.   Notwithstanding the fact that allowing the loan to get out of balance constituted breach under the Construction Loan, HSH indicated that it would continue to fully fund the Construction Loan, provided Triyar started paying interest out-of-pocket every month, move $1,600,000.00 of interest reserves to HC contingency, and contribute additional capital towards hard cost contingencies.

18.   In reliance upon HSH's promises to continue funding the Construction Loan, Triyar contributed an additional $3,210,688.00 in owners' equity in February of 2008, which Triyar pointed out was more than sufficient to cover HSH's request for additional owners' equity.

19.   Following Triyar's additional capital contribution in February of 2008, HSH continued to fund the Construction Loan.

20.   By April of 2008, HSH had again noticed Triyar's default, for not

CARMICHAEL & POWELL
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
7301 NORTH 16TH STREET, SUITE 103
PHOENIX, ARIZONA 850020-5297
(602) 861-0777

- 3 -

having completed construction of the Hotel by December 31, 2007; but again agreed to continue to fund the Construction Loan to Triyar, provided Triyar sign off on a release, indicating that HSH was not in breach, and had not waived or released any claims, and that neither Triyar nor its guarantors had any defenses to the Construction Loan and guarantees, which Triyar signed (under financial duress of not getting any further funding to complete construction of its Hotel).

21.    In reliance upon HSH's promise to continue funding the Construction Loan, Triyar contributed an additional $701,082.00 of its own capital for payment of construction costs, on or about April 15, 2008.

22.    As an additional condition to continue funding the Construction Loan, HSH required Triyar to pay a portion of the General Conditions, which should have been funded through the Construction Loan.

23.    On or about May 1, 2008, in reliance upon HSH's promise to continue funding the Construction Loan, Triyar contributed an additional $590,000.00 in capital, of which $500,000.00 was for said general conditions.

24.    HSH continued to promise that it would fund the balance of the Construction Loan for the completion of the construction of the Hotel and the condominiums, provided Triyar continued to make capital contributions to cover a portion of the construction related costs.

25.    In reliance upon HSH's promise of continued funding of the Construction Loan to complete the Hotel and condominiums, Triyar funded an additional $401,965.00 on or about June 9, 2008; an additional $484,398.00 on or about July 8, 2008; and an additional $561,980.00 on or about August 14, 2008.

26.    Notwithstanding Triyar's additional capital contributions of approximately $9,500,000.00, in reliance upon HSH's promises to continue funding the Construction Loan through completion, HSH refused to fund any additional construction draws after August 14, 2008.

- 4 -

27. Upon information and belief, by late 2007, HSH was already planning to wind down its commercial real estate lending in the United States and had already closed its Hospitality Lending Division.

28. The majority of the money funded by Triyar for completion of The W Hotel came from capital contributions by its principals, Steven Yari and Shahrod Yari, in reliance upon HSH's promises to continue funding the Construction Loan through completion of the Hotel.

29. As a result of HSH's refusal to fund any further construction draws, Triyar and Yari were forced to cover draws by contributing an additional $1,665,495.00 on or about September 8, 2008; and an additional $634,799.00 on or about October 21, 2008.

30. As a result of HSH's failure to fund the remaining approximately $5,500,000 of the Construction Loan it promised to fund, Triyar has been unable to complete construction of the 18 luxury condominiums, some of which had ready, willing and able buyers.

31. As a direct and proximate result of HSH's failure to fund the remaining $5,500,000 due on the Construction Loan, as promised, Triyar and Yari have lost the revenue and profit from the sale of the condominiums and have, in turn, defaulted on obligations to others.

32. On or about September 5, 2008, Triyar was able to open The W Hotel, as a result of its own capital contributions to finish same; however, the condominiums remained uncompleted, as the result of HSH's failure to fund the balance of the Construction Loan, resulting in a loss to Triyar of $10,000,000.00 in expected profits.

33. HSH falsely promised that it would fund the balance of the Construction Loan to induce Triyar and Yari to make significant capital contributions and complete the construction of the Hotel, so HSH could then reap

the benefit of foreclosing on a fully constructed and operational hotel (as opposed to an incomplete, non-operational hotel, with millions of dollars worth of construction left to complete).

34. On or about January 16, 2009, HSH noticed a Trustee's Sale of the W Hotel.

## COUNT ONE

### (Fraudulent Misrepresentation)

35. All previous allegations are incorporated herein by reference, as if set forth in their entirety.

36. From April 10, 2008 through August 14, 2008, HSH, orally and in writing, promised Triyar and Yari that HSH would fund the balance of its Construction Loan.

37. At the time HSH made the foregoing representations, it did so without the present intent to fund the balance of the Construction Loan.

38. HSH's foregoing promises to fund the balance of the Construction Loan were material and were false at the time they were made.

39. Triyar and Yari were unaware of the falsity of the representations and reasonably relied upon HSH's misrepresentations by infusing an additional $11,793,933.00 in capital into The W Hotel.

40. HSH's misrepresentations were done with an evil mind and with the intent or with knowledge of the significant risk that same would cause significant financial harm to Triyar and Yari, to the benefit of the bank, such that the imposition of exemplary damages would be appropriate.

41. As a direct and proximate result of HSH's misrepresentations and failure to fund the $5,500,000.00 balance of the Construction Loan, Triyar and Yari have been damaged by $11,000,000.00 in additional capital they infused into The W Hotel and by the loss of the $10,000,000.00 in profits they would have

- 6 -

earned through the sale of the condominiums.

42.    To the extent HSH is able to obtain title to the Hotel through its Trustee's Sale, as a result of Triyar's default, which was the result of Triyar's failure to obtain the profits from the sale of the condominiums, which was caused by HSH's failure to fund the construction of the condominiums, Triyar and Yari will have additional damages for the loss of their $34,000,000.00 in equity in The W Hotel, $10,000,000.00 in lost profit from the sale of the condominiums, and lost future revenue from the operation of the Hotel.

**WHEREFORE**, Triyar, Steven Yari and Shahrod Yari request this Court to enter judgment in their favor and against HSH, on Count One of the Complaint, awarding them their direct, general and consequential damages, not less than $21,000,000.00, plus punitive damages, their taxable costs, and whatever other further relief this Court deems just and proper in the premises.

**<u>COUNT TWO</u>**

**(Promissory Estoppel)**

43.    All previous allegations are incorporated herein by reference, as if set forth in their entirety.

44.    HSH made numerous oral and written promises to fund the balance of the Construction Loan to induce additional capital contributions by Triyar and its principals, the Yaris, to complete The W Hotel.

45.    Triyar and Yari justifiably relied upon HSH's promises and infused an additional $17,000,000.00 of their own capital to complete the construction of The W Hotel.

46.    Notwithstanding same, HSH refused to fund the balance of the Construction Loan to complete The W Hotel and condominiums, and instead, noticed a Trustee's Sale on the Hotel after it opened.

47.    As a direct and proximate result of HSH's broken promises, Triyar

CARMICHAEL & POWELL
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
7301 NORTH 16TH STREET, SUITE 103
PHOENIX, ARIZONA 850020-5297
(602) 861-0777

and Yari suffered damages in the amount of not less than $21,000,000.00.

**WHEREFORE,** Triyar and Yari request this Court to enter judgment in their favor and against HSH, on Count Two of the Complaint, awarding them their direct, general and consequential damages, not less than $21,000,000.00, plus their taxable costs, and whatever other further relief this Court deems just and proper in the premises.

**COUNT THREE**

**(Breach of Implied Covenant of Good Faith)**

48.    All previous allegations are incorporated herein by reference, as if set forth in their entirety

49.    A covenant of good faith and fair dealing is implied in the Construction Loan and Amendment thereto.

50.    HSH breached the implied covenant of good faith and fair dealing by promising to continue to perform the Construction Loan, by disbursing the balance of the Construction Loan proceeds, without the present intent to do so, and simply to induce Triyar and Yari to infuse in excess of $11,000,000.00 to further improve the Bank's security, by completing The W Hotel.

51.    As a direct and proximate result of HSH's breach of its implied covenant of good faith and fair dealing, Triyar and Yari have been damaged in an amount which is not less than $21,000,000.00.

**WHEREFORE,** Triyar and Yari request this Court to enter judgment in their favor and against HSH, on Count Three of the Complaint, awarding them their direct, general and consequential damages, not less than $21,000,000.00, plus their taxable costs, and whatever other further relief this Court deems just and proper in the premises.

/ / /

/ / /

- 8 -

CARMICHAEL & POWELL
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
7301 NORTH 16TH STREET, SUITE 103
PHOENIX, ARIZONA 850020-5297
(602) 861-0777

## COUNT FOUR

### (Declaratory Relief)

52. All previous allegations are incorporated herein by reference, as if set forth in their entirety.

53. On or about January of 2009, HSH noticed a non-judicial Trustee's Sale of The W Hotel in Maricopa County, Arizona, pursuant to A.R.S. § 33-801 *et seq.*

54. On or about February 3, 2009, HSH filed a Complaint for breach of guarantee against the Yaris personally in the United States District Court, Southern District of New York, seeking to recover the full $82,000,000.00 due under the Construction Loan.

55. Arizona's statutes governing trustee's sales limit the guarantor's deficiency and provide, pursuant to A.R.S. § 33-814, that the guarantors are entitled to a credit for the greater of the bid price at the trustee's sale, or the fair market value of the property at the time of the sale.

56. New York's deficiency statutes have no provision for a credit for the Fair Market Value of the property.

57. An actual controversy exists between the Yaris and HSH as to whether HSH can invoke the benefit of Arizona's expedited non-judicial trustee's sale procedure, which, as a protection, provides for a credit, towards any deficiency, equal to the greater of the bid price or the fair market value of the property at the time of the sale, and also file suit against the guarantors in New York seeking to recover the full amount of the debt, pursuant to New York's deficiency statutes, which do not provide for an offset for the fair market value of the property.

58. As such, Triyar and the Yaris request this Court to declare, pursuant to 28 U.S.C. § 2201(a), whether HSH can invoke Arizona's trustee's sale law and

CARMICHAEL & POWELL
PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
7301 NORTH 16TH STREET, SUITE 103
PHOENIX, ARIZONA 850020-5297
(602) 861-0777

- 9 -

then sidestep its deficiency protections (by providing a credit for the fair market value of the property) by filing a deficiency action against the guarantors in New York for the full amount of the debt.

**WHEREFORE**, Triyar and Yari request this Court to declare that HSH, by availing itself of Arizona's non-judicial trustee's sales statutes, cannot file a separate suit in New York to obtain the full loan amount as the deficiency, in contravention of A.R.S. § 33-814(A)'s provision that the deficiency has to be reduced by the greater of the fair market value of the property or the bid price at the time of the sale, where a non-judicial trustee's sale is noticed.

DATED this 13th day of March, 2009.

CARMICHAEL & POWELL, P.C.

Richard C. Gramlich
Adam M. Weiler
7301 North 16th Street, Suite No. 103
Phoenix, Arizona  85020-5297
Attorneys for Plaintiffs

- 10 -